840 So.2d 945 (2002)
John Wayne DAVIS
v.
STATE of Alabama.
CR-00-1678.
Court of Criminal Appeals of Alabama.
June 28, 2002.
*947 Mark Anthony Dutton, Moulton, for appellant.
Bill Pryor, atty. gen., and Joseph G.L. Marston III, asst. atty. gen., for appellee.
PER CURIAM.
John Wayne Davis was convicted of distribution of a controlled substance (marijuana), a violation of § 13A-12-211, Ala. Code 1975. He was sentenced to five years in prison; the sentence was enhanced by five years, pursuant to § 13A-12-250, Ala.Code 1975, and by an additional five years, pursuant to § 13A-12-270, Ala.Code 1975. In addition to court costs, the trial court ordered Davis to pay $50 to the Crime Victims' Compensation Fund, a $1,000 fine, and a $1,000 penalty under the Demand Reduction Assessment Act.
An extensive recitation of the facts is unnecessary in this case. Davis's conviction arose out of a controlled buy conducted by law-enforcement authorities in Lawrence County. The evidence at trial indicated that Davis was arrested in the parking lot of a Burger King restaurant in Moulton after he had sold marijuana to an undercover agent.
Davis makes four arguments on appeal: (1) that the trial court erred in enhancing his sentence pursuant to §§ 13A-12-250 and 13A-12-270 because, he says, he was "entrapped" by police into participating in a drug transaction within the geographical boundaries specified in these Code sections; (2) that there was no evidence of a "sale" of a controlled substance and that, therefore, the trial court erred in enhancing his sentence pursuant to § 13A-12-250; (3) that no "maps or other documents" were introduced into evidence to corroborate the testimony of Officer Jim McAbee, one of the officers present during the controlled buy, that the parking lot of the Burger King restaurant was 2.1 miles from the Moulton Middle School and, therefore, that the trial court erred in enhancing his sentence pursuant to § 13A-12-250; and (4) that the evidence did not establish that the Burger King restaurant was within three miles of a "public housing project owned by a housing authority" and, therefore, that the trial court erred in enhancing his sentence pursuant to § 13A-12-270.
After carefully reviewing the record and the briefs, we find no basis in Davis's first three arguments for reversing his sentence. Davis raised entrapment as a defense only to the application of the statutory sentence enhancements. The transcript of the sentencing hearing reveals the following:
"THE COURT: As to the question of entrapment before that this Court charged the jury in the case and as the evidence will reflect, there was no basis to submit that to the jury. As a matter of fact, there was an affirmative defense raised.
"[DAVIS'S ATTORNEY]: Yes, sir, Judge.
"THE COURT: And my understanding, correct me if I'm wrong, withdrawn, and the defendant did not proceed on that basis.

*948 "[DAVIS'S ATTORNEY]: Your Honor, that is correct. And let meand if I'm not making myself clear, if the Court would bear with me just a second. Judge, our objection during the sentencing phase in regards to the enhancement provisions, one of our objections is based on entrapment for this reason: Not entrapment that the offense happened, the jury has found that, but, Judge, and we'll get into this in a few minutes, but the Lawrence County Drug Task Force actually set up the place where this alleged transaction took place, and it's our position that Mr. Davis was entrapped in the place that he was at which has resulted in these enhancement provisions coming into play. This isI think my understanding this has never been brought up or there is no cases on this, but our position would be that Mr. Davis waswhereas we didn't bring it up as any kind ofpresent any testimony during the trial, but our position would be that the Lawrence County Drug Task Force actually set up the place where this alleged transaction took place, and because of that they entrapped him into getting these sentencing [enhancement] provisions to come into play."
(R. 264-66.)
One may avail himself of the entrapment defense where he is instigated, induced, or lured by a law-enforcement officer, for the purpose of prosecution, into committing a crime that he otherwise had no intention of committing. Where the defense of entrapment is raised, two separate issues of fact are presented: (1) whether there was a governmental inducement, and (2) whether the defendant was ready and willing to commit the act without persuasion. The defense of entrapment is not applicable where law-enforcement officers merely afford an opportunity to one intending to violate the law. It is only when the government's deception actually implants the criminal design in the defendant's mind that the defense of entrapment comes into play. The primary focus is on the predisposition of the accused rather than the agent's actions. See Adams v. State, 585 So.2d 161 (Ala.1991).
The record in the present case indicates (and Davis does not argue otherwise) that there was no basis in the evidence presented to the jury to warrant a charge on the entrapment defense. As noted above, the defense of entrapment is not applicable where law-enforcement officers merely afford an opportunity to one intending to violate the law. The defense of entrapment was not an issue for the jury. The jury's verdict is conclusive with respect to the issue of Davis's criminal intent. The trial court did not err in rejecting Davis's challenge to the application of §§ 13A-12-250 and 13A-12-270 based on an entrapment defense.
Davis's second and third arguments were not presented to the trial court; therefore, the issue whether the evidence was sufficient to establish that the sale of a controlled substance took place in the Burger King restaurant parking lot and the issue whether maps or other documents were necessary to corroborate the testimony of Officer McAbee are not properly before this Court. See Cole v. State, 721 So.2d 255, 259 (Ala.Crim.App. 1998) ("This argument, however, was not preserved for appellate review because it was never presented to the trial court to allow that court to make a ruling on this issue."). We note, however, that even if those issues had been properly preserved, we would find no merit in them. The trial transcript clearly indicates that a complete drug transaction between Davis and an undercover agent took place in the Burger King parking lot. Furthermore, this Court has held that the testimony of a *949 police officer, even without corroborating maps and other documents, is sufficient to establish the three-mile requirement of § 13A-12-250. See Grider v. State, 600 So.2d 401, 404 (Ala.Crim.App.1992) ("Officer Greg Ward of the Geneva Sheriff's Department testified that the sale occurred at a housing project which was three blocks from a school and less than one mile. There was sufficient evidence to prove that the sale occurred within three miles of a school.").
However, with respect to issue four, the record indicates that the trial court did err in enhancing Davis's sentence pursuant to § 13A-12-270. That section is applicable only upon a proper showing that the defendant sold a controlled substance within three miles of a "public housing project owned by a housing authority." The undisputed evidence presented to the trial court indicates that the housing project the State argued was within three miles of the Burger King parking lot Moulton Manorwas not "owned by a housing authority." Teresa Hill, the administrative assistant to the executive director of the Moulton Housing Authority, testified as follows:
"[PROSECUTOR]: Is Moulton Manor managed by the Moulton Housing Authority?
"[HILL]: Yes, sir.
"[PROSECUTOR]: And is Moulton Manor a federally funded housing project?
"[HILL]: Yes, sir.
"[DAVIS'S ATTORNEY]: Objection to relevance, Your Honor. It says
"THE COURT: I'll overrule.
"[PROSECUTOR]: Is Moulton Manor reserved primarily for elderly and disabled?
"[HILL]: Yes, sir.
"[PROSECUTOR]: It's not open for the public, I couldn't go there and rent an apartment?
"[HILL]: That's correct.
"[PROSECUTOR]: Along with these other apartments that you've mentioned, they are not open for the public, but they are public housing projects?
"[HILL]: That's correct.
"[PROSECUTOR]: Could any member of the public that is elderly or disabled apply for residence at Moulton Manor?
"[HILL]: Yes, sir.
"[DAVIS'S ATTORNEY]: Objection to relevance.
"THE COURT: I'll overrule. Your answer was yes?
"[HILL]: Yes, sir.
"[PROSECUTOR]: Who owns these housing projects?
"[HILL]: All right. The city owns all the other ones except for Moulton Manor and that is owned by Jack Golden. He lives in Montgomery.
"[PROSECUTOR]: Is it managed by the housing authority?
"[HILL]: Moulton Housing Authority.
"[PROSECUTOR]: Through HUD?
"[HILL]: That's right.
"[PROSECUTOR]: That's all.
"THE COURT: Any other questions?
"RE-CROSS-EXAMINATION BY [DAVIS'S ATTORNEY]:
"[DAVIS'S ATTORNEY]: But Moulton Manor is owned by an individual; correct?
"[HILL]: That's correct."
(R. 294-96.) This testimony is not disputed in the record.
*950 Because § 13A-12-270 clearly does not apply in cases where a controlled substance is sold within three miles of a privately-owned housing project, we must reverse Davis's sentence and remand the case for the trial court to resentence Davis without the application of § 13A-12-270. See Ex parte Looney, 797 So.2d 427, 428 (Ala.2001) (wherein the Supreme Court of Alabama noted the well-established rule that words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says).
For the foregoing reasons, we affirm Davis's conviction. However, we reverse his sentence and remand the case for resentencing consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur. SHAW, J., concurs in part and dissents in part, with opinion, which COBB, J., joins.
SHAW, Judge, concurring in part and dissenting in part.
I concur in that part of the opinion affirming Davis's conviction. However, I would not reach the issue upon which the majority reverses Davis's sentence because I would reverse his sentence and remand the case for resentencing without application of the sentence enhancements in §§ 13A-12-250 and 13A-12-270, Ala.Code 1975, in accordance with my special writing in Poole v. State, [Ms. CR-99-1200, August 31, 2001] ___ So.2d ___, ___ (Ala.Crim.App.2001) (Shaw, J., concurring in the result).